IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


ROBERT W. NIELSEN,                          08-CV-6371-BR

      Plaintiff,

                                 OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

      Defendant.


KATHRYN TASSINARI
MARK A. MANNING
Harder, Wells, Baron & Manning P.C.
474 Willamette, Suite 200
Eugene, Oregon 97401
(541) 686-1969

      Attorneys for Plaintiff

**DWIGHT C. HOLTON**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Office of the General Counsel
**RICHARD A. MORRIS**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2156

   Attorneys for Defendant

**BROWN, Judge.**

  Plaintiff Robert W. Nielsen seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Nielsen's protective application for Supplemental Security Income (SSI).  This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

  Following a review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

## ADMINISTRATIVE HISTORY

  Nielsen filed his application for SSI on February 27, 2006.

2 - OPINION AND ORDER

Tr. 62.[1]  His application was denied initially and on reconsideration.  Tr. 47-52, 54-56.  An Administrative Law Judge (ALJ) held a hearing on February 5, 2008.  Tr. 17-46.  At the hearing, Nielsen was represented by an attorney.  Tr. 17.  Nielsen and a vocational expert (VE) testified at the hearing.  Tr. 17-46.

The ALJ issued an opinion on March 27, 2008, in which he found Nielsen is not disabled and, therefore, is not entitled to benefits.  Tr. 6-16.  On September 15, 2008, that decision became the final decision of the Commissioner when the Appeals Council denied Nielsen's request for review.  Tr. 7-9.


## BACKGROUND

Nielsen was 51 years old at the time of the hearing before the ALJ.  Tr. 14, 17, 47.  He completed his education through the tenth grade.  Tr. 27.  Nielsen has performed past work as a floor-covering installer.  Tr. 22-23.  Nielsen alleges a disability onset date of January 15, 2004.  Tr. 73.

Nielsen was involved in a motorcycle accident in 1986.  Tr. 33.  As a result, he was hospitalized for four fractured vertebrae.  Tr. 33, 148, 166.  Nielsen has since suffered from chronic back pain, which was aggravated by Nielsen's slip and

---

[1]Citations to the official transcript of record filed by the Commissioner on May 27, 2009, are referred to as "Tr."

fall in about 2003.  Tr. 33.  Nielsen has been diagnosed with chronic lumbar pain with degenerative changes, chronic shoulder pain with right-shoulder impingement syndrome, and left-elbow pain associated with lateral epicondylitis.  Tr. 151, 162-63, 168-70.

Nielsen also asserts he has dyslexia.  Tr. 95, 148.


## <u>STANDARDS</u>

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a

preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## **DISABILITY ANALYSIS**

### I.   **The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the

5 - OPINION AND ORDER

Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other

6 - OPINION AND ORDER

words, the Social Security Act does not require complete incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20

C.F.R. § 416.920(g)(1).

## ALJ'S FINDINGS

At Step One, the ALJ found Nielsen has not engaged in substantial gainful activity except for the last quarter of 2006 and the first two quarters of 2007, for which time the ALJ found Nielsen is ineligible for benefits. Tr. 11.

At Step Two, the ALJ found Nielsen has the severe impairments of back pain and shoulder pain. Tr. 11. The ALJ, however, found Nielsen's left elbow pain is not a severe impairment. Tr. 12.

At Step Three, the ALJ found Nielsen is capable of "medium work . . . except that he is limited from frequent overhead use of his right upper extremity." Tr. 12. The ALJ did not otherwise describe Nielsen's RFC.

At Step Four, the ALJ concluded Nielsen is capable of performing his past relevant work as a floor layer even though Nielsen performed such work in the past at a "heavy" exertional level as opposed to "medium" exertion. Tr. 14. Nevertheless, the ALJ found Nielsen is "able to perform [such work] as generally performed" and did not address Nielsen's previous performance of that job at a "heavy" exertional level. Tr. 14.

At Step Five, the ALJ also concluded Nielsen is capable of performing other jobs that exist in significant numbers in the

8 - OPINION AND ORDER

national economy such as cafeteria attendant, production assembler, assembly-machine tender, and security guard. Tr. 14-16. Accordingly, the ALJ found Nielsen is not disabled and, therefore, is not entitled to benefits. Tr. 16.


## DISCUSSION

Nielsen contends the ALJ erred by (1) improperly considering unsubstantiated earnings records as the basis for finding Nielsen had performed substantial gainful activity since his alleged onset date of January 15, 2004; (2) failing to provide clear and convincing reasons for discrediting Nielsen's statements about the intensity, persistence, and limiting effects of his symptoms; (3) failing to properly consider the opinion of Michael Potter, M.D., Nielsen's treating physician; (4) failing to find Nielsen's psychological symptoms severe at Step Two; and (5) failing to find Nielsen disabled on the basis of Medical-Vocational Guideline 201.10.

## I.   ALJ's finding that Nielsen had performed substantial gainful activity since his alleged onset date of January 15, 2004.

Nielsen contends the ALJ erred when he considered unsubstantiated earnings records to support his conclusion at Step One that Nielsen had engaged in substantial gainful activity since his alleged onset date of January 15, 2004.

The ALJ found Nielsen engaged in substantial gainful activity in the last quarter of 2006 (earnings of $2,100.00), the

9 - OPINION AND ORDER

first quarter of 2007 (earnings of $4,049.00), and the second quarter of 2007 (earnings of $5,983.00). Tr. 11. Nielsen points out the record contains a document reflecting the earnings that the ALJ relied on to reach his conclusions, but that document does not identify Nielsen as the wage-earner apparently paid by a restaurant named "Casa Gonzalez" in Martinsburg, West Virginia. Tr. 82. Moreover, the document indicates the name and Social Security number of the wage-earner has not been verified. Tr. 82. Nielsen's Certified Earnings Report, in contrast, reflects Nielsen earned only $822.00 since his alleged onset date of January 15, 2004. Tr. 80-81. Nevertheless, the ALJ did not ask Nielsen about these purported unverified earnings at the hearing.

In his Response to Nielsen's opening brief, the Commissioner concedes the ALJ erred when he relied on an uncertified earnings report as the basis for his conclusion that Nielsen engaged in substantial gainful activity in 2006 and 2007. If this matter is remanded, the Commissioner acknowledges the ALJ must reconsider his findings at Step One in light of this error.

The Court, therefore, concludes the ALJ erred when he found Nielsen engaged in substantial gainful activity in the last quarter of 2006 and the first two quarters of 2007 based on the unverified earnings report from Casa Gonzalez in Martinsburg, West Virginia.

10 - OPINION AND ORDER

**II.  The ALJ's finding that Nielsen's testimony was not credible.**

Nielsen also contends the ALJ erred when he failed to provide clear and convincing reasons for rejecting Nielsen's subjective symptom testimony.

The test for rejecting a claimant's subjective symptom testimony is set out in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The *Cotton* test establishes two basic requirements for a claimant to present credible symptom testimony:  He must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d at 1407.  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Lester*, 81 F.3d at 834.  *See also Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General assertions that the claimant's testimony is not credible are insufficient.  "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

11 - OPINION AND ORDER

The ALJ found Nielsen satisfied the *Cotton* test by providing evidence that he has medically determinable impairments that could be expected to produce some degree of the symptoms he alleges. Tr. 13. Indeed, x-rays of Nielsen's lumbar spine revealed moderate to severe L1 and mild L4 compression fractures. Tr. 166. The ALJ, however, determined Nielsen's subjective testimony about the "intensity, persistence, and limiting effects" of his symptoms "are not credible to the extent they are inconsistent with the residual functional capacity assessment." Tr. 13. The ALJ did not identify any evidence of malingering. Thus, the ALJ must provide clear and convincing reasons for rejecting Nielsen's symptom testimony. *Lester*, 81 F.3d at 834.

Nielsen testified he suffers from constant back and shoulder pain that limits his ability to stand for more than 30 minutes and forces him to take breaks while doing chores such as washing dishes, cleaning house, or mowing the lawn. Tr. 24-26, 28, 33-34. Nielsen also testified the pain limits his ability to remain in a single postural position, and he spends up to 14 hours in a recliner to relieve his back pain. Tr. 28-29. He attested merely carrying a bag of groceries aggravates his back pain. Tr. 29-30. According to Nielsen, his back pain has forced him to give up hobbies such as skiing, camping, fishing, hunting, bowling, and playing pool. Tr. 27.

The ALJ discredited Nielsen's testimony on the following

grounds:  (1) Nielsen's testimony that he only worked for two
days in the fourth quarter of 2006 is contradicted by an earnings
report in the record, (2) Nielsen's activities of daily living
belie his testimony as to the limiting effects of his
impairments, (3) the record reflects Nielsen's impairments
have not worsened since his motorcycle accident in 1986, and
(4) Nielsen's lack of treatment records and the conservative
treatment he received undermines his testimony as to the severity
of his limitations.   Tr. 11-13.

### A.   Nielsen's earnings.

As noted, the ALJ relied on unsubstantiated earnings reports
as the basis for determining that Nielsen had engaged in
substantial gainful activity in 2006 and 2007.  The ALJ
discredited Nielsen's testimony on the ground that those records
were "inconsistent with [Nielsen's] report to the Social Security
Administration" that he only worked a few hours in 2006.  Tr. 11.

The Court, however, has already concluded the ALJ erred when
he found Nielsen engaged in substantial gainful activity in 2006
and 2007 based on unverified earnings.

### B.   Nielsen's activities of daily living.

The ALJ also found Nielsen's reported activities of daily
living were inconsistent with his claims of disability.  Tr. 13.
The ALJ noted Nielsen "is capable of attending to his personal
needs without assistance, attends to all household chores,

including lawn care, is able to prepare his own meals, and spends time daily studying his [B]ible and participating in an online [B]ible study." Tr. 13. The ALJ found these activities are "inconsistent with [Nielsen's] reported inability to sit for prolonged periods and his allegations that he has difficulty using his left hand." Tr. 33.

Initially the Court notes none of the daily activities listed by the ALJ are necessarily inconsistent with an inability to sit for long periods or with a limited ability to use one hand because a person could perform each of these activities standing up and predominantly using his right hand.

Moreover, Nielsen attested he cannot perform daily activities without aggravating his pain symptoms. For example, Nielsen testified he could only perform household chores "five minutes at a time" because such activity aggravates his back pain. Tr. 28. Nielsen also testified even though he can mow his lawn, he can only make "two laps" before his back pain gets so severe that he must rest. Tr. 34.

The Ninth Circuit has held:

> This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from his credibility as to his overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001)(quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

*Benecke v. Barnhart*, 379 F.3d 587, 593-94 (9th Cir. 2004).  Thus, the mere fact that Nielsen is able to perform some daily activities does not undermine his credibility.  The ALJ did not explain his reasons for concluding Nielsen's daily activities are inconsistent with Nielsen's stated limitations nor did the ALJ explain how Nielsen's ability to perform such daily activities translates into the ability to perform work-related functions on a regular and continuing basis.

### C.   Worsening of Nielsen's impairments.

The ALJ also discredited Nielsen's subjective symptom testimony on the ground that the record does not reflect Nielsen has "experienced any additional trauma or further exacerbation to demonstrate worsening of any condition" since his motorcycle accident in 1986.  Tr. 13.

The record, however, contains numerous references to the worsening and exacerbation of Nielsen's impairments since 1986.  As noted, Nielsen attested he fell hard while he was working in approximately 2003, which "put [Nielsen] right back where [he] was . . . when the [motorcycle] accident happened."  Tr. 33.  Nielsen's testimony is corroborated by Dr. Potter in his treatment notes in which he indicates Nielsen slipped on a wet surface and fell from "shortsteps" onto his back and experienced "exacerbation of his back pain since that time."  Tr. 161, 168.  Moreover, Nielsen stated in a Disability Report that his "back is

worse and [he] is starting to walk with a limp because of it."
Tr. 130.  In addition, Richard Alley, M.D., and Dr. Potter each
noted Nielsen's back impairment is "degenerative," which suggests
Nielsen's condition has worsened over time.  Tr. 154, 170.  The
ALJ did not address any of this evidence before he concluded
Nielsen had not experienced exacerbation or worsening of his
condition.

Although the ALJ found Nielsen "demonstrated an ability to
work" after his motorcycle accident, the Court has concluded the
ALJ erred in his assessment of Nielsen's work history.  As noted,
the record reflects Nielsen worked very little after 1986 when
his accident occurred and only had insubstantial reported
earnings in 1987, 2001-2003, and 2005.  Tr. 13, 81.  The record
also reflects Nielsen suffered additional lower-back trauma in
2003 that exacerbated his back pain prior to his application for
benefits in January 2004 and that Nielsen's condition has
worsened since that time.

**D.   Nielsen's limited and conservative treatment record.**

Finally, the ALJ discredits Nielsen's testimony on the
ground that Nielsen has a limited treatment record that reflects
his symptoms are manageable with conservative medical treatment.
Tr. 13.

SSR 96-7p provides:

> [T]he adjudicator must not draw any
> inferences about an individual's symptoms and

> their functional effects from a failure to
> seek or pursue regular medical treatment
> without first considering any explanations
> that the individual may provide, or other
> information in the case record, that may
> explain infrequent or irregular medical
> visits or failure to seek medical treatment.

*Id.* at *7-*8.

Nielsen attested he has not had health insurance since the 1980s due to his lack of income and must treat his pain with over-the-counter pain products because he cannot afford pain medication. Tr. 22, 25-26. Although the ALJ acknowledged Nielsen's testimony that he cannot afford health insurance, the ALJ discredits Nielsen's symptom testimony on the ground that "he appears to have ignored the existence of cost-free medical services such as Volunteers In Medicine." Tr. 13. At the hearing, Nielsen attested he had received treatment at a medical clinic called the Curry Street clinic where he was able to obtain x-rays and treatment. Tr. 30-31. According to Nielsen, however, he could not return to the clinic before he paid the $57 he was billed for the x-rays. Tr. 31. In fact, when the ALJ questioned Nielsen directly about his access to cost-free services such as Volunteers in Medicine, Nielsen testified he had been trying to find such services. Tr. 38.

Thus, Nielsen's lack of employment and corresponding lack of health insurance adequately explain his limited treatment history and the conservative nature of the treatment he received for his

17 - OPINION AND ORDER

symptoms.

In summary, the Court concludes the ALJ has not provided clear and convincing reasons supported by substantial evidence in the record for rejecting Nielsen's subjective symptom testimony.

**III. The ALJ's failure to consider Dr. Potter's February 20, 2008, report.**

Nielsen contends the ALJ did not consider the February 20, 2008, opinion of  Dr. Potter, Nielsen's treating physician from 2007-2008.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007)(quoting *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007)).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Lester*, 81 F.3d at 830-32.  If an ALJ "completely ignores or neglects to mention a treating physician's medical opinion that is relevant to the medical evidence being discussed[,] . . . [s]uch cases should be remanded to the agency for proper consideration of the evidence." *Lingenfelter*, 504 F.3d at 1045 (citing *Cotton*, 799 F.2d at 1408-09).

Dr. Potter treated Nielsen for his shoulder and back pain.

18 - OPINION AND ORDER

Tr. 161-64, 168-70.  In his treatment notes dated February 20, 2008, Dr. Potter diagnosed Nielsen with chronic lumbar pain with degenerative changes resulting from L1 and L4 compression fractures.  Tr. 170.  Dr. Potter also diagnosed Nielsen with right-shoulder impingement syndrome.  Tr. 170.  Dr. Potter concluded Nielsen's "work status has been significantly impaired secondary to this and he is not able to work at this time.  He would benefit from physical therapy, but is unable to afford that because of his financial situation."  Tr. 170.

Although the ALJ discussed Dr. Potter's August 2007 report, the ALJ did not specifically address Dr. Potter's opinion as set out in his February 20, 2008, report.  Tr. 13-14.  The Commissioner contends the ALJ need not consider Dr. Potter's report because it does not contain significant probative evidence and does not describe any specific functional limitations.  The Court disagrees.  Dr. Potter's report indicates both the significance of Nielsen's impairment and its impact on his ability to work.  Tr. 170.  Moreover, Dr. Potter described limitations on Nielsen's forward flexion and trunk rotation, his increased pain with sitting, and decreased range of motion in his right shoulder.  Tr. 168-70.  In addition, the paucity of treatment records in this particular record due to Nielsen's inability to afford medical insurance means each of the treatment records provided by Nielsen is particularly significant and

19 - OPINION AND ORDER

warrants discussion by the ALJ.

Finally, the Court cannot determine whether the ALJ considered Dr. Potter's opinion regarding Nielsen's limitations when the ALJ assessed Nielsen's RFC because the ALJ, without further elaboration, only stated Nielsen is capable of "medium work . . . except that he is limited from frequent overhead use of his right upper extremity." Tr. 12. The ALJ, however, is required to evaluate a claimant's RFC by more than the claimant's exertional capacity; *i.e.*, the RFC must include

> a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. At step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of "sedentary," "light," "medium," "heavy," and "very heavy" work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it.

SSR 96-8p, at *3. This function-by-function assessment is crucial to any Step Four determination that a claimant can return to her past relevant work. *Id.* at *3-5.

The Court, therefore, concludes on this record that the ALJ erred when he failed to address the limitations set out in Dr. Potter's February 20, 2008, report in the assessment of Nielsen's RFC and in the determination that Nielsen is able to perform his past relevant work.

20 - OPINION AND ORDER

IV.  **The ALJ's failure to find Nielsen's psychological impairments severe.**

Nielsen also contends the ALJ erred at Step Two when he failed to find Nielsen's psychological impairments are severe.

At Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 416.920(a)(4)(ii).  A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities."  20 C.F.R. § 416.921(a).  *See also Ukolov*, 420 F.3d at 1003.  The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 416.921(a), (b).  Such abilities and aptitudes include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *Id.*

The Step Two threshold is low:

> [A]n impairment can be considered as not
> severe only if it is a slight abnormality
> which has such a minimal effect on the
> individual that it would not be expected to
> interfere with the individual's ability to
> work. . . .  [T]he severity regulation is to

> do no more than allow the Secretary to deny
> benefits summarily to those applicants with
> impairments of a minimal nature which could
> never prevent a person from working.

SSR 85-28, at *2 (Nov. 30, 1984)(internal quotations omitted).
The Ninth Circuit describes Step Two as a "*de minimus* screening
device to dispose of groundless claims." *Smolen*, 80 F.3d at
1290. *See also Webb v. Barnhart*, 433 F.3d 683, 686-88 (9th Cir.
2005). "Great care should be exercised in applying the not
severe impairment concept." SSR 85-28, at *4.

The ALJ did not discuss Nielsen's psychological conditions
at Step Two or elsewhere in his opinion. Although the record is
limited with respect to Nielsen's psychological conditions,
Nielsen referred to psychological difficulties both in his
testimony before the ALJ and in several documents; for example,
difficulties understanding and following directions, getting
along with others, and concentration. Tr. 32, 106. Nielsen also
noted he had been prescribed an antidepressant. Tr. 32, 144-45.
Moreover, Nielsen's brother, William Nelson, corroborated
Nielsen's psychological symptoms, including Nielsen's "social
emotional issues," "anger and emotional outrage," and difficulty
getting along with authority figures. Tr. 122-23.

In his Response to Nielsen's opening brief, the Commissioner
makes several arguments not advanced by the ALJ with respect to
Nielsen's psychological impairments. The Court cannot consider
those arguments because the ALJ did not discuss any evidence in

22 - OPINION AND ORDER

the record relating to those impairments.  "[R]egardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for [his] decision and [the court must] confine [its] review to the reasons supplied by the ALJ."  *Steele v. Barnhart*, 290 F.3d 936, 942 (9th Cir. 2002).

The Commissioner also asserts Nielsen did not allege psychological impairments in his application for benefits.  As noted, however, Nielsen asserted in both his Functional Capacity Report on April 2, 2006, and in a Recent Medical Treatment form that he had limitations resulting from psychological impairments for which he had been prescribed medication.  Tr. 101, 106, 144-45.  Nielsen's brother also submitted a third-party Functional Capacity Report on March 20, 2006, in which he described similar limitations.  Tr.  117, 122-23.

Thus, the Court concludes on this record that the ALJ erred when he failed to address at Step Two whether Nielsen's psychological limitations are severe.

**V.    The ALJ's failure to rely on the Medical-Vocational
       Guidelines.**

Nielsen also contends the ALJ erred when he did not find Nielsen disabled on the basis of Medical Vocational Guideline 201.10, which provides a basis for finding individuals approaching advanced age disabled as a matter of law.  *See* 20 C.F.R. pt. 404, subpt. P., appx. 2.  The guidelines apply only

23 - OPINION AND ORDER

at Step Five of the sequential analysis and only to claimants limited to sedentary work. *Id.* §§ 200.00, 200.10.

As noted, the ALJ found Nielsen is capable of returning to his past relevant work as a floor layer, which is medium-exertion work. Tr. 12, 14. As noted, Medical Vocational Guideline 201.10 applies only to claimants limited to sedentary work. If, however, the ALJ finds on remand that Nielsen is only capable of sedentary work, that Nielsen is incapable of returning to his past relevant work, and that it is necessary to proceed to Step Five, the ALJ must consider the Medical Vocational Guidelines.

## REMAND

Having found the ALJ erred, the Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits. The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a

24 - OPINION AND ORDER

single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Id.* at 1178 n.2.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *Id.* at 1179.  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

Here the Court finds additional proceedings are necessary to allow the ALJ to consider (1) whether Nielsen actually engaged in substantial gainful activity in 2006 and 2007; (2) Dr. Potter's opinion as set out in his February 20, 2008, report; (3) Nielsen's asserted psychological impairments and their effects on his capacity to perform work-related functions; and (4) whether the Medical Vocational Guidelines, if applicable, render Nielsen disabled as a matter of law.  The Court, therefore, remands this matter for further administrative proceedings consistent with this Opinion and Order.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of

42 U.S.C. § 405(g) for further administrative proceedings
consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 16th day of February, 2010.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District